# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAI‘I

CALVIN LEE HARRIS, JR.,

       Plaintiff,

  vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

       Defendant.

Case No. 17-cv-00499-DKW-RLP

**ORDER REVERSING DECISION
OF ACTING COMMISSIONER OF
SOCIAL SECURITY AND
REMANDING FOR FURTHER
ADMINISTRATIVE
PROCEEDINGS**

On October 5, 2017, Plaintiff Calvin Lee Harris, Jr. appealed the Acting
Commissioner of Social Security's denial of his application for disability insurance
benefits. In his Opening Brief, Harris asks this Court to review (1) whether
substantial evidence supported the Administrative Law Judge's ("ALJ") decision,
and (2) the ALJ's rejection of his testimony. After carefully reviewing the record
and the arguments of counsel in their briefs and during oral argument, the Court
concludes that this case must be remanded for further administrative proceedings as
set forth below.

# BACKGROUND

## I.  Review of Disability Claims

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA).  20 C.F.R. § 404.1520.  First, the claimant must demonstrate that he is not currently involved in any substantial, gainful activity.  *Id*. §§ 404.1520(a)(4)(i), (b).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities.  *Id*. §§ 404.1520(a)(4)(ii), (c).  Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. §§ 404.1520(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual functional capacity (RFC) to perform work.  *Id*. § 404.1520(e).  The evaluation then proceeds to a fourth step, which requires the claimant to show his impairment, in light of his RFC, prevents him from performing work he performed in the past.  *Id*. §§ 404.1520(a)(4)(iv), (e), (f).  If the claimant is able to perform his previous work, he is not disabled.  *Id*. § 404.1520(f).  If the claimant cannot perform his past work, though, the evaluation proceeds to a fifth step.  *Id*. § 404.1520(a)(v).  At this final step, the Commissioner must demonstrate that (1) based upon the claimant's

RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at step five, the burden moves to the Commissioner). If the Commissioner fails to meet this burden, the claimant is deemed disabled. 20 C.F.R. § 404.1520(g)(1).

## II.   The ALJ's Decision

On March 9, 2017, the ALJ issued a decision finding Harris "not disabled" under the SSA. Administrative Record ("AR") at 26. At step one of the evaluation process, the ALJ determined that Harris had not engaged in substantial gainful activity from the alleged onset date of January 31, 2008 through the date last insured of September 30, 2013. *Id.* at 17. At step two, the ALJ determined that, through September 30, 2013, Harris had the following severe impairments: degenerative joint disease to the left shoulder; adhesive capsulitis of the left shoulder; a tumor of the proximal humerus and the medial superior scapula of the left shoulder; degenerative joint disease to the right knee; left knee strain; and degenerative lumbar and cervical disc disease. *Id.* at 17-18. At step three, the ALJ determined that, through September 30, 2013, Harris did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. *Id.* at 19.

Before reaching step four, the ALJ determined that Harris had the RFC to perform "light exertional-level work," except for the following limitations: (1) minimal[1] reaching overhead with the left arm; (2) occasional[2] reaching, pushing, or pulling with the left non-dominant arm at all other planes; (3) occasional bending, stooping, crouching, or crawling; (4) sitting for no more than two hours at one continuous period of time before standing or walking; and (5) standing and/or walking for no more than two hours at one continuous period of time before sitting. *Id.* at 19-23.

At step four, the ALJ determined that, through September 30, 2013, Harris was unable to perform any past relevant work. *Id.* at 24. At step five, the ALJ determined that, through September 30, 2013, there were jobs that existed in significant numbers in the national economy that Harris could perform. *Id.* at 24-25. More specifically, a vocational expert stated that, in light of Harris' RFC, age, education, and work experience, he would be able to perform the jobs of mail clerk, office helper, and cashier II. *Id.* at 25. This final determination resulted in the ALJ finding that Harris was not disabled under the Social Security Act at any time from January 31, 2008 through September 30, 2013. *Id.*

---

[1] The ALJ defined "minimal" as meaning no more than 15% of a workday.
[2] The ALJ defined "occasional" as meaning no more than one-third of a workday.

### III.    The Appeals Council's Decision

On July 7, 2017, the Appeals Council granted Harris' request for more time before acting on his case. *Id*. at 9. On August 23, 2017, Dr. Eddie Soliai signed a "Physical Medical Source Statement," which was submitted to the Appeals Council for review. *Id*. at 2, 1033-36.

On September 7, 2017, the Appeals Council denied Harris' request for review of the ALJ's decision. *Id*. at 1. With respect to the "Physical Medical Source Statement" from Dr. Soliai, the Appeals Council stated that Harris' case had been decided through September 30, 2013, and the statement did not relate to the period at issue. *Id*. at 2. The Appeals Council therefore concluded that the statement did not affect the ALJ's decision. *Id*.

### IV.    This Action

In his Opening Brief, Dkt. No. 22, Harris makes two principal arguments. First, the ALJ legally erred in rejecting Harris' testimony and doing so was contrary to the substantial evidence in the record. Second, the ALJ's decision was not supported by substantial evidence, including the August 23, 2017 "Physical Medical Source Statement" from Dr. Soliai.

### STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec*., 528 F.3d

1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id*. (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* at 679; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (citations omitted).

In addition, a court may not reverse an ALJ's decision on account of an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). In making this assessment, the Court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id*. at 1115.

## DISCUSSION

### I. Harris' Testimony

In his Opening Brief, Harris challenges the ALJ's rejection of the testimony he gave before the ALJ. Specifically, Harris challenges the ALJ's rejection of his

testimony that, during a workday, he would need to lie down and put his feet up in order to control pain in his back. Harris asserts that he "consistently" testified that he was limited to two hours of sitting or standing before he would need to lie down and elevate his legs.

In response, Dkt. No. 23, the Acting Commissioner argues that the ALJ properly discredited Harris' testimony because it was not corroborated by objective medical evidence. The Acting Commissioner further argues that the ALJ properly determined that Harris' testimony was inconsistent with his activities of daily living, which, the Acting Commissioner asserts, included Harris taking college courses. The Acting Commissioner further argues that the ALJ properly determined that Harris' treatment history was inconsistent with his testimony.

In order to properly assess the parties' arguments related to this issue, the Court looks first to the relevant parts of Harris' testimony and the ALJ's treatment of the same. At a hearing before the ALJ, Harris testified in pertinent part as follows. The main reason he retired from the military was because he could not sit or stand for more than two hours. AR at 39. He has not worked since January 2008, but he has taken college classes through a program offered to him as a result of his military service. *Id*. If he stood up for two hours, he would need to lay down on his back and elevate his legs to relieve pressure in his back. The pressure build-up would result in a lot of stiffness and muscle spasms, which, on some days, would run down

his left leg to his feet.   *Id*. at 41.   Harris first began experiencing back pain in 2006[3] and, although he thought he could continue working, "it seemed like it got worse." *Id*. at 41-42.   "It got to a point where [he] just couldn't go no more," and that is why he retired.   *Id*. at 42.   Harris could not stand, walk, or sit for more than two hours anytime during the day.   *Id*. at 45-46.   When he worked, he noticed that by 10:00 a.m. he would need to go lie down because his back had got so bad he could not stand on his feet.   *Id*. at 46.

Harris further testified that, by the time he retired, he could not stand or walk for more than an hour, and, at the time of the hearing, he could not stand or walk for 20 to 30 minutes.   *Id*. at 46.   At the time he retired, Harris could sit for about an hour.   *Id*. at 46-47.   He stated that he experienced a lot of pain walking from his car to the building in which he testified and waiting for the hearing.   *Id*. at 46.

When he retired in January 2008, Harris tried to find a job, but, while standing at the employment agency, he could not make it through the day because his back started to bother him.   *Id*. at 47.   By 11:00 a.m., he would need to go home and lie down.   *Id*.   Harris explained that this is why he has never filed for unemployment because he could not stand in line for that process.   *Id*. at 48.   At this point in his testimony, Harris clarified that he could not stand or sit for more than two hours in 2004, by the time he retired it was an hour, and now it is 20 to 30 minutes.   *Id*.

_____

[3]Harris also testified that he has had back "problems" since 2002.   AR at 42.

Since he retired in January 2008, he has not been able to do a sit-down job. *Id.*
at 50-51. Otherwise, he would not have retired as early as he did. *Id*. at 51.

Harris further testified that he stopped taking college classes at the end of
2014. *Id*. at 52. Going to the classes became difficult because he could not do
them for more than 20 or 30 minutes before needing to stand up, which interrupted
the classes. *Id*. Taking the classes wore Harris down because he had difficulties
sitting or standing for anywhere from 30 to 45 minutes. *Id*. at 53. Even doing
homework at home became difficult because he could not sit for long enough. *Id*.
at 53-54. In addition, one of the requirements of the classes was to do a
"face-to-face," which required Harris to go into a classroom and sit for four hours.
*Id*. at 54. This requirement became very difficult. *Id*.

In the decision denying Harris' claim for benefits, the ALJ stated that Harris
testified he could not stand, walk, or sit for more than two hours, and he could stand,
walk, or sit for an hour when he retired. *Id*. at 20. The ALJ found that Harris could
make simple meals, do simple housework, drive a car, and shop in stores. The ALJ
determined that these activities of daily living were not consistent with Harris'
testimony. The ALJ further determined that Harris' testimony was not consistent
with the medical evidence. With respect to Harris' back, the ALJ stated the medical
evidence showed that, in November 2008, Harris underwent an MRI of his spine
which showed cervical spondylosis greatest at C4-5 and C5-6 with very mild central

canal stenosis at C4-5.   A cervical spine MRI in October 2010 showed mild

degenerative changes.   A lumbar spine x-ray in September 2012 was unremarkable.

*Id*.   Cervical spine x-rays in January 2013 revealed mild focal degenerative joint

disease at C4-6.   *Id*. at 21.   A cervical spine MRI in February 2013 demonstrated

stable multilevel degenerative changes.   *Id*.

The ALJ determined that there was "no indication in the medical evidence to

support [Harris'] allegation that he needs to lie down and elevate his leg after sitting,

standing, and/or walk[ing] 2 hours at a time."   *Id*.   The ALJ further determined that

such an allegation was "fully addressed" by the limitations in the RFC and that

"normal breaks at 2 hour intervals address this allegation as well."   *Id*.

The Court now turns to the relevant law.   In this Circuit, the Court of Appeals

has explained that, once a claimant produces objective medical evidence of an

impairment,[4] "an ALJ may not reject a claimant's subjective complaints based

solely on a lack of medical evidence to fully corroborate the alleged severity of

pain."   *Burch*, 400 F.3d at 680.   Instead, an ALJ "may engage in ordinary

techniques of credibility evaluation," as well as consider such factors as the

claimant's treatment history and daily activities.   When there is no evidence of

malingering,[5] "the ALJ's reasons for rejecting pain testimony must be clear and

---

[4]It is not disputed here that Harris produced objective medical evidence of an impairment related to his back.

[5]It is not argued here that there is evidence of Harris malingering.

convincing." *Id*. "General findings are insufficient." *Id*. (quotation and alteration omitted). Therefore, to summarize, in rejecting Harris' testimony that his back pain requires him to lie down and elevate his legs, the ALJ could not reject this testimony solely on the basis of medical evidence and the reasons the ALJ gave for rejecting this testimony needed to be clear and convincing.

In light of this precedent, the Court cannot affirm the ALJ's determination to reject Harris' testimony about his back pain. First, to the extent the ALJ's statement−that Harris' testimony was addressed by the RFC−can be construed as a suggestion that the ALJ did not in fact reject Harris' testimony, that is plainly not the case. The Acting Commissioner does not contend otherwise. For example, the RFC does not incorporate Harris' testimony that, when he retired, he could only stand, walk, or sit for one hour. As another example, even if that testimony is ignored, the RFC limited Harris to sitting (or standing) for no more than two hours before standing (or sitting). That, however, was not Harris' testimony, as he testified that after sitting (or standing) he would need to lie down and elevate his legs.

Second, there are two reasons why the ALJ rejected Harris' testimony. One is certainly the ALJ's determination that Harris' testimony was not consistent with the medical evidence. Contrary to Harris' assertion otherwise, there is nothing inappropriate about the ALJ considering this medical evidence. *See Burch*, 400

F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").[6]  However, a lack of medical evidence cannot be the *only* reason for discounting pain testimony.  *See id*.  In other words, even if the medical evidence is a clear and convincing reason for rejecting a claimant's pain testimony, there must be more.

Here, the only other reason that the ALJ gave for rejecting Harris' testimony was his activities of daily living.   The problem, though, is that there is nothing clear or convincing about this reason, at least as articulated by the ALJ.   The ALJ simply states that Harris can "make simple meals, do simple housework, drive a car, and shop in stores," and then concludes that these "activities of daily living are not consistent with his allegations of disabling pain."   AR at 20.   This is the epitome of a "[g]eneral" finding, given that the ALJ provides no explanation of any kind as to how Harris' activities of daily living are not consistent with his allegation of needing to lie down and elevate his legs after standing or sitting.

---

[6]The cases to which Harris cites say nothing different.   *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (concluding the ALJ's rejection of testimony was insufficient where the *only* reason given for doing so was the lack of objective medical evidence); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (explaining that an ALJ "may not discredit the claimant's allegations of the severity of pain *solely* on the ground that the allegations are unsupported by objective medical evidence.") (emphasis added).   Even *Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir. 1990), is factually no different.   In *Gonzalez*, the Circuit concluded that the ALJ failed to explain why the claimant's daily activities undermined his testimony, which left only a lack of medical evidence as a reason for rejecting it.   *Id*. at 1201.   It is in that context that the Circuit's statement that a lack of medical evidence is "inadequate" must be read.

In response, the Acting Commissioner argues that the ALJ properly relied upon Harris' activities of daily living. The Acting Commissioner, though, also simply recites Harris' activities. Again, no explanation is provided for how those activities indicate a lack of consistency with Harris' testimony about needing to elevate his legs. There has simply been no explanation in this regard, and thus, it is impossible to assess whether Harris' activities of daily living are a clear and convincing reason for rejecting his testimony.[7]

Looking to the sole exhibit the ALJ cited with respect to Harris' daily activities, a Function Report that Harris filled out in April 2015, there is no support therein for the ALJ's determination that Harris' daily activities were not consistent with his testimony. Initially, only some of the daily activities discussed in the report are placed in a temporal context. *See generally* AR at 284-291. When Harris says how long he spends on an activity, he largely supports his testimony rather than undermines it.[8] Notably, Harris states at the outset of the form that he

---

[7]The Acting Commissioner also asserts that Harris took college classes. It is not clear whether the Acting Commissioner means to suggest that the classes Harris took should be considered an activity of daily living that was not consistent with his testimony. In any event, while the Acting Commissioner is correct that the ALJ noted Harris' attendance at college classes, *see* AR at 17, the ALJ did not mention the issue again and certainly did not say that his attendance was a reason why his testimony was rejected. There is likely good reason for this, given that Harris testified he stopped going to classes because his frequent need to stand up interrupted them.

[8]The only possible exception is Harris' statement that he takes between five minutes and two hours to prepare meals. *See* AR at 286. It is not clear how Harris goes about preparing his meals, but, to the extent he prepares them standing up, there may be a conflict between his testimony—that when he retired, he could stand for no more than one hour (a time period that allegedly decreased thereafter)—and his statement, in April 2015, that he could prepare meals for up to two hours.

cannot do anything for more than 20 to 30 minutes, *id.* at 284, driving in traffic for more than 30 minutes results in pain, he shops once or twice a month for 15 to 20 minutes, he is unable to sit while watching television or reading for more than 30 minutes without experiencing stiffness in his back, and he can walk for about a mile before experiencing stiffness, *id.* at 284, 287-289.[9]

The Acting Commissioner further argues that the ALJ properly determined that Harris' treatment history undercut his allegations of pain. The Acting Commissioner places this argument under a sub-heading, which itself is placed under a heading purportedly addressing Harris' argument that the ALJ erred in rejecting his testimony. Assuming, therefore, that this argument relates to the ALJ's rejection of Harris' testimony, the problem is that the ALJ did not reject Harris' testimony on the ground that it was not consistent with his treatment history. As already mentioned, the ALJ gave two reasons for rejecting Harris' testimony: activities of daily living and medical evidence. To the extent the Acting Commissioner believes there was a third reason, it is not expressed as such in the ALJ's decision.[10]

---

[9]As such, reviewing Harris' Function Report in this fashion is not second-guessing the ALJ as the Acting Commissioner contends, as, at present, neither the ALJ nor the Acting Commissioner has explained how the Function Report is open to more than one rational interpretation.

[10]In that regard, the Acting Commissioner appears to cite the AR at pages 20-23, but nowhere on those pages does the ALJ determine that Harris' treatment history discredits his testimony.

In any event, the main thrust of this argument appears to be that Harris underwent physical therapy and non-steroidal anti-inflammatory medication and demonstrated improvement. The Acting Commissioner ignores, however, that none of this treatment relates to the matter at issue here: Harris' back pain. Instead, as the ALJ discussed, Harris had physical therapy, experienced pain relief, and took anti-inflammatory medication with respect to his *shoulder*. *See* AR at 21.

In this light, the Court cannot find that the ALJ has provided clear and convincing reasons for rejecting Harris' testimony regarding his back pain because (A) one of the two reasons the ALJ gives−Harris' activities of daily living−is unexplained, unclear, and, at this juncture, unconvincing, and (B) the second reason−a lack of medical evidence−is alone insufficient as a matter of law to reject the testimony. Because this error is not harmless−in that, if not rejected, Harris' testimony could change the RFC to an extent that he would be considered disabled[11]−the Court remands this case to the Acting Commissioner, as Harris requests.

---

[11]In a hearing in March 2016, the ALJ asked a vocational expert (VE) a hypothetical about whether an individual could work if he took unscheduled breaks throughout the day to lie down, equaling about two hours a day. AR at 88. The VE responded that the individual would not be able to work. *Id.* It will be up to the ALJ to determine the length of any breaks Harris may need to take during a workday after considering his testimony in the manner the Ninth Circuit requires. The Court merely presents the hypothetical question posed to the VE as an example of what may happen to the disability determination if Harris' testimony is not rejected.

More specifically, the Court remands and directs the ALJ to assess again Harris' testimony.   If the ALJ determines that the testimony should be rejected, the ALJ must provide clear and convincing reasons for the rejection.   Although the ALJ may consider whether the medical evidence is consistent or not with Harris' testimony, the medical evidence may not be the only reason for rejecting the testimony.   In addition, to the extent the ALJ determines that Harris' activities of daily living are not consistent with his testimony, the ALJ cannot simply list the activities and then conclude there is an inconsistency.   Instead, the ALJ must explain why the activities are not consistent with Harris' testimony.   The ALJ may also consider any of the other factors that the Ninth Circuit has explained may be considered in assessing a claimant's testimony, such as inconsistencies therein.

## II.   <u>Substantial Evidence</u>

This issue is not well presented by Harris.   He appears to frame the issue best in reply as: whether "Dr. Soliai's medical opinion submitted to the Appeals Council provides additional support to the substantial evidence establishing that [Harris] must lie down to control his back pain."   Harris asserts that the August 23, 2017 Physical Medical Source Statement from Dr. Soliai, which the Court will refer to going forward as the "August 2017 Evidence," further demonstrates the ALJ's decision to reject his testimony was not supported by substantial evidence.   In this light, Harris appears to be making two distinct but related substantial evidence

arguments: (1) there is substantial evidence showing that he must lie down; and (2) the rejection of his testimony was not supported by substantial evidence.

As for the latter argument, Harris takes a somewhat different tact to the one he took in the first issue addressed above. As discussed, the ALJ gave two reasons for rejecting Harris' testimony. This Court found that one of those reasons−activities of daily living−was not clear and convincing, and the one remaining reason−the medical evidence−was alone insufficient to reject Harris' testimony. Harris, in part, now challenges the medical evidence reason, arguing that the ALJ's determination−that the medical evidence was not consistent with Harris' testimony−is not supported by substantial evidence.

As far as the Court is concerned, there is no reason to address this argument, given that the Court has already remanded for the ALJ to re-assess Harris' testimony. This is especially so where, as here, the "major issue" for Harris is the purported support the August 2017 Evidence gives to Harris' testimony. *See* Reply Brief at 18. As Harris offers, the ALJ has never had the opportunity to review the August 2017 Evidence. Equally important, Harris also offers that the Appeals Council did not properly consider the August 2017 Evidence. The Appeals Council rejected the August 2017 Evidence on the ground that it did not relate to the period of disability at issue in this case. Although the August 2017 Evidence was certainly signed by Dr. Soliai after the period of disability at issue (and after the ALJ made his

decision), Dr. Soliai checks a box indicating that the limitations he describes have been present since January 31, 2008. *See* AR at 1036. This would make the August 2017 Evidence relate to the period of disability at issue, given that the ALJ stated that the relevant period was from January 31, 2008 through September 30, 2013. But, that does not mean this Court should review the August 2017 Evidence in the first instance. Instead, as the case which Harris describes as being "[n]early identical" to this one states, "remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." *See* Opening Brief at 12 (quoting *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011)).

Thus, on remand, in re-assessing Harris' testimony, the ALJ should consider all of the evidence in the record, including the August 2017 Evidence. In doing so, the ALJ should state and explain the weight, if any, he has given to the opinions of Dr. Soliai that are contained in the August 2017 Evidence, including the limitations on sitting and standing.[12]

---

[12]In the March 9, 2017 decision, the ALJ gave "some" weight to limitations Dr. Soliai assigned in December 2016. AR at 23. As discussed by the ALJ, though, those limitations related solely to Harris' left upper extremity. Thus, it will be necessary for the ALJ to state the weight he affords the different limitations in the August 2017 Evidence and, of course, the reasons for doing so.

Harris also argues that there was substantial evidence showing he must lie down.[13]   As an initial matter, this argument is a red herring.   The standard of review is whether substantial evidence supports the *ALJ's* decision.   *Ryan*, 528 F.3d at 1198.   The standard is *not* whether the *claimant* has presented evidence (substantial or otherwise) to support a purported limitation.[14]

In any event, Harris' case is not helped by the evidence upon which he relies that was in the record at the time of the ALJ's decision.   Such evidence includes: (1) a progress note from Dr. Wayland Lum; (2) a "pain assessment" from 2009; and (3) Veterans Affairs (VA) disability ratings from February 2008 and July 2012. Harris argues that this medical evidence supports his testimony, and thus, the ALJ erred in determining that there was no indication that he needs to lie down and elevate his legs after two hours of sitting, standing, or walking.

First, Dr. Lum's progress note.   Harris cites the progress note because it states that a lumbar spine injury he suffered in 1999 affects his work by "limiting desk work and mobility."   Dr. Lum also noted that Harris is "limited to sitting, standing 30 min[utes] and walking a mile before pain starts."   AR at 631.   There is

---

[13]One part of this "substantial evidence" is the August 2017 Evidence, which, as just discussed, this Court has found the ALJ should consider in the first instance.   Therefore, the Court does not further address the same with respect to this argument.

[14]There is good reason for this because it is the ALJ's role to resolve conflicting medical evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 956-957 (9th Cir. 2002).   Merely because a claimant has presented evidence to support his side of a conflict, therefore, is no reason to alter the ALJ's resolution of the same.

no indication (and certainly no mention), however, that Harris needed to lie down and elevate his legs due to his back pain. Dr. Lum's progress note, therefore, does not support Harris' testimony in this regard.

Second, the 2009 pain assessment.[15] The pain assessment is part of a larger evaluation of Harris for posttraumatic stress disorder and depression by a clinical psychologist. *See* AR at 597-605. Harris cites to the pain assessment because it references his own statements regarding pain relief when he lies down and lifts his legs. The assessment also mentions Harris' statements about not being able to engage in prolonged sitting or standing. AR at 598. This is all well and good, and, if this was a matter of whether there was evidence showing that Harris had said in the past that he experiences pain relief when he lies down and lifts his legs, the pain assessment could be useful. That is not the issue though. Contrary to Harris' contention, his responses to questions during the pain assessment are not "findings" that pain relief is achieved by lying down and lifting his legs. *See* Reply Brief at 8. No such finding is made in the pain assessment or in the wider evaluation. Instead, the evaluation states that Harris would continue to visit a primary care physician for his medical conditions. *See* AR at 602. Moreover, other than saying that he could not engage in "prolonged" sitting or standing, there is no indication this meant a

---

[15]Although it is not relevant to the Court's analysis, the pages of the AR to which Harris cites indicate the pain assessment occurred in June 2009, not January 2009 as Harris asserts. *See* AR at 597.

limit of two hours doing those activities. There is also no indication how long

Harris needed to lie down and lift his legs in order to achieve pain relief. In this

light, the 2009 pain assessment does not support Harris' testimony.

Third, the VA disability ratings. Harris argues that the ALJ was "required"

to consider the VA disability ratings, which appears to suggest that the ALJ did not

do so. But the ALJ did. Specifically, the ALJ acknowledged that the VA found

Harris to be disabled for VA purposes in February 2008 and again in subsequent

ratings. AR at 22. The ALJ further stated that he was not bound by the VA's

disability determination. *Id*. The ALJ then explained that he gave "some" weight

rather than "great" weight to the ratings because the medical evidence did not

support a finding of disability or additional functional limitations beyond the ones

contained in the RFC. *See id*.[16]

In his briefs, Harris entirely ignores this analysis from the ALJ. Because

Harris does not even mention the ALJ's consideration and analysis of the VA

disability ratings, this Court has no reason to disturb the ALJ's determination that

they are only entitled to "some" weight or the ALJ's determination that the medical

evidence did not support any additional limitations that may have been suggested by

---

[16]The decision confusingly states that the ALJ "does not give the VA disability determinations some weight and not great weight, however, because while the medical evidence indicates that the claimant has significant functional limitations, the medical evidence does not support the VA's findings of disability, nor does the medical evidence justify additional functional limitations beyond those adopted above." *See* AR at 22. The Court construes the ALJ as assigning "some" weight to the ratings in light of the language in the clause immediately following "however."

the ratings.[17]    Put simply, Harris cannot ask this Court to essentially perform a de

novo review of the VA disability ratings, while ignoring the ALJ's own review of

the same.    As a result, the VA disability ratings do not provide support for Harris'

testimony.[18]

## **CONCLUSION**

To the extent set forth herein, the Acting Commissioner's decision denying

Harris' application for disability insurance benefits is REVERSED.    This case is

///


///

---

[17]This case is, thus, different from *Luther v. Berryhill*, 891 F.3d 872, 877 (9th Cir. 2018), on which Harris relies, given that, in *Luther*, the ALJ did not explain how the VA disability rating was weighed or why it was rejected.

[18]Even if the Court were willing to delve into the substance of the VA disability ratings, it is far from clear that they provide support for the contention that Harris must lie down and elevate his legs after sitting or standing for two hours.    Initially, the applicability of the VA disability ratings is a nuanced issue for which, across his briefs, Harris dedicates roughly one substantive sentence: that the VA disability ratings for Harris' back pain are based upon him needing bed rest.    *See* Opening Brief at 21.    Contrary to Harris' assertion in his Reply Brief, though, at no point does he explain why this corroborates the severity of his back pain.    Instead, he simply relies on the phrase "bed rest" and assumes that this means something.    In the context of this case, the Court does not see why it does.    The phrase "bed rest" does not appear to be defined in the pertinent regulation, 38 C.F.R. § 4.71a but, but, for purposes of Harris' back pain, the phrase is used to explain that Harris suffered "incapacitating episodes" for "at least 4 weeks but less than 6 weeks during the past 12 months," resulting in a disability rating of 40%.    Harris provides no explanation, though, how that rating corroborates him being unable to stand or sit for more than two hours or that he needs to take longer than normal breaks after doing so.    In addition, the regulation explains that an "incapacitating episode is a period … that requires bed rest prescribed by a physician and treatment by a physician."    Harris has made the Court aware of no evidence indicating that he has ever been prescribed bed rest by a physician.

REMANDED to the Acting Commissioner for further administrative proceedings consistent with this Order. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: November 19, 2018 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

_Calvin Lee Harris, Jr. v. Nancy A. Berryhill_; Civil No. 17-00499 DKW RLP;
**ORDER REVERSING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

23